## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBBIE D. JONES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    C.A. No. 04-1523-JJF |
| | ) |
| COMMISSIONER STAN TAYLOR, | ) |
| WARDEN RICK KEARNEY, | ) |
| SGT. BARRY BILES, and TIANA[1] | ) |
| BANKS, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY**

NATURE AND STAGE OF THE PROCEEDINGS

1.   Robbie Jones ("Plaintiff" or "Jones") initiated this action pursuant to 42 *U.S.C.* § 1983 by filing a Complaint and Motion to Proceed *In Forma Pauperis* with the Court on December 16, 2004.  (D.I. 1, 2).  Plaintiff named as defendants, Commissioner Stan Taylor, Warden Rick Kearney, Sergeant Barry Biles, and Correctional Officer Tiana Banks ("Defendants").  The Court granted the Plaintiff *in forma pauperis* status on January 14, 2005 (D.I. 4) and issued a service order on November 1, 2005.  (D.I. 6).

2.   Waiver of service forms were executed by all Defendants in March of 2006.  Defendants Biles, Banks, and Kearney answered the Complaint on June 9, 2006. (D.I. 16).  Defendant Taylor filed a Motion to Dismiss the Complaint on June 14, 2006. (D.I. 17, 18).  The motion was denied in part and granted in part by the Court on December 7, 2006.  (D.I. 21, 22).  The Court dismissed any official capacity claims against Defendant Taylor, but allowed the individual capacity claims to proceed.  *Id.*

---
[1] Improperly named as "Teanna" in the Complaint.

Defendant Taylor answered the Complaint on December 15, 2006. (D.I. 23). The Court issued a scheduling order on February 23, 2007. (D.I. 24).

3.  The allegations in Plaintiff's Complaint stem from an incident which occurred on July 6, 2004. Jones alleges that Sgt. Biles used excessive force against him in the Sergeant's office and that C/O Banks stood by and permitted "Sgt. Biles to assault the plaintiff." (Complaint, at Statement of Claim). Plaintiff also claims that Correctional Officer David Seymore[2] observed the incident and asked Sgt. Biles to "cease his behavior." *Id.*

4.  Plaintiff alleges in his Complaint that Warden Kearney and Commissioner Taylor "have not provided sufficient training for Defendants Biles and Banks in dealing with inmates." *Id.* He further alleges that Sgt. Biles has been involved in a number of assaults on inmates at the facility and that it is the responsibility of Defendants Taylor and Kearney to train and determine psychological fitness for a position. *Id.* Plaintiff appears to make further allegations in his complaint about due process and equal protection, but he stated in his deposition that these claims are not a part of the action. (Exhibit "A" – Jones Dep. 90-91).

## STATEMENT OF FACTS

5.  On July 6, 2004, two correctional officers were leaving the compound at Sussex Correctional Institution ("SCI") due to a family emergency. (Exhibit "B" – Biles Incident Report). They were being escorted across the compound, one with their arm around the other, when two inmates began hollering at them. *Id.* Sgt. Biles heard one of them yell "Yeah put arms on your f***ing wife I see you." Sgt. Biles turned to see both Jones and another inmate, Brittingham, standing at the gates hollering. *Id*

---

[2] Improperly named as "Seymour" in the Complaint.

6.     Sgt. Biles returned to his building and had both inmates individually called into his office. (Exhibit "B", "C" – Incident Report/Biles Affidavit). Sgt. Biles first had Inmate Brittingham in his office to discuss what had happened. Biles discussed the issue with Brittingham and he was written up and moved to Administrative Segregation ("ASDA") with no incident. (Exhibit "B"). Sgt. Biles then had Jones come to his office to discuss what had happened. Defendant Banks was responsible for letting Jones off of the tier to go to Sgt. Biles's office, but she did not observe any incident between Sgt. Biles and Jones. (Exhibits "C", "D" – Biles Affidavit/Banks Affidavit). Jones arrived to Sgt. Biles's office yelling "what the F*** is this all about"? (Exhibits "B", "C"). Sgt. Biles told Jones to sit down and be quiet. Jones did not obey the order to sit down, but responded by stepping up to Sgt. Biles in a threatening manner while continuing to yell and use profanities. *Id.* Sgt. Biles then physically subdued Jones using an A-frame hold taught to officers in use of force training. (Exhibit "C"). He then cuffed Plaintiff, escorted him to ASDA, and notified the watch commander of the incident. (Exhibit "B").

7.     Officer David Seymore did not observe the incident. (Exhibit "E" – Seymore Affidavit). If he had, he would have written an incident report and his name would have been included on the report of Sgt. Biles as an involved individual. *Id.*

8.     Defendant Banks also did not observe the incident. (Exhibits "C", "D"). Again, if she had observed the incident, she would have been included on Sgt. Biles's incident report as an involved individual and she would have written her own report. *Id.*

9.     Plaintiff was seen by medical staff immediately following the incident. (Exhibit "A" – Jones Dep. 68:12-14). The nurse observed a small abrasion on Jones's head and a small laceration on his top lip. The nurse did not observe any other problems.

(Exhibit "F" – Medical notes).  Jones alleges he told the nurse that his neck and arm were hurting him and that she told him to get some ice.  (Exhibit "A" – Jones Dep. 68:4-7).  He alleges that these injuries went away after a day and that he never requested follow-up treatment.  (*Id.* at 69-70, 71:10-12).

        10.    Sgt. Biles wrote an incident report on that same day documenting the incident.  This report was approved by his shift commander, David Wilkinson.  (Exhibit "B").  A use of force review was also initiated by Lieutenant Joe Isaacs and the use of force was approved by the watch commander.  (Exhibit "G" – Use of Force Review).

        11.    Both Jones and Brittingham received a disciplinary write-up for Inciting a Riot in relation to the incident in the yard.  (Exhibits "H", "I").  Plaintiff Jones also received a write-up for Disorderly and Threatening Behavior in relation to the incident in Sgt. Biles's office.  Inmate Brittingham pled guilty to the charge of Inciting a Riot and received 15 days loss of all privileges.  (Exhibit "I").  Jones pled not guilty to both charges, was found guilty of Disorderly or Threatening Behavior and not guilty of Inciting a Riot, and appealed.  The decision was affirmed on appeal.  (Exhibit "H").  Plaintiff's sanction was a loss of all privileges for 15 days.  *Id.*

## ARGUMENT

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element

4

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus, only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

**I.   Jones Cannot Establish an Eighth Amendment Claim Against Any of the Defendants.**

Plaintiff's Eighth Amendment claims against Defendants must fail for several reasons. He cannot establish a claim for liability against Defendants Taylor and Kearney because they had no personal involvement in the allegations of the Complaint and they cannot be held liable on the basis of *respondeat superior*. Plaintiff cannot establish a claim of failure to protect against Defendant Jones because she was not present for the incident. Defendant Biles cannot be held liable because he did not use excessive force against Plaintiff.

### A.    Plaintiff cannot maintain an action against Defendants Taylor and Kearney on the basis of supervisory liability.

It is well established that section 1983 will not support a claim based on the theory of *respondeat superior* or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). To succeed on a claim against prison officials in a supervisory capacity based on prison policies or practices, a "Plaintiff must identify a specific policy or practice that the supervisor failed to employ and he must show that: 1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice." *Jones v. Taylor,* 2006 WL 3590311, at *2 (D.I. 21)(citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Jones has not identified what specific policy Defendants Taylor and Kearney failed to employ that created an unreasonable risk. To the extent that Jones relies on his allegations of failure to properly train, there is simply no evidence to support this claim. All correctional officers employed with the Department of Correction ("DOC") go through a rigorous eight-week training process before the become officers, which includes basic defense training and training on the use of force module. Officers are additionally required to take yearly refresher courses on use of force modules. (Exhibit "J" – Deloy Affidavit). Jones has not established that Defendants Taylor or Kearney failed to employ any policy or procedure on training or otherwise. Plaintiff has an obligation at this stage of the litigation to come forth with affirmative evidence rather than continuing to rely on the unsupported allegations of failure to properly train and supervise that Plaintiff relied on in his Complaint. *Celetox*, 477 U.S. at 322.

Plaintiff also can not establish that Defendants Taylor or Kearney were aware that an unreasonable risk was created. Plaintiff asserts in his Complaint that Defendant Biles was involved in a number of assaults on inmates, but there is no evidence to support this allegation. Sgt. Biles has been employed with the DOC for 15 and at SCI sine 1998 and has worked his way up through the ranks to Sergeant. He does not have a record of any disciplinary history for assaulting inmates. (Exhibit "J" – Deloy Affidavit). There is no support for the argument that Defendants Taylor and Kearney were aware that Sgt. Biles was involved in numerous assaults on inmates because there is no evidence that Sgt. Biles ever assaulted any inmate.

Finally, without identifying a policy or that Defendants Taylor and Kearney were aware of a risk to Plaintiff, Plaintiff cannot establish that they were indifferent to that risk.

Plaintiff fails to meet any prong of the *Sample* test and his claim against Defendants Taylor and Kearney based on their supervisory capacity cannot survive summary judgment. The motion should be granted in their favor.

**B.  Plaintiff cannot support his claims against Defendants Taylor and Kearney because they had no personal involvement in the allegations contained in Plaintiff's Complaint.**

To support a claim for a civil rights violation pursuant to section 1983, a plaintiff must show that the defendant had *personal involvement* in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis added). A plaintiff must prove that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306,

7

336 (3d Cir. 1981). In addition, this Court has held that, "[g]rievances are not enough to impute knowledge to [a] defendant." *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)).

The Court construed Plaintiff's allegations of failure to train and the allegations that Sgt. Biles was involved in numerous assaults as sufficient for pleading purposes. (D.I. 21, at p. 5). At this stage of the litigation, Plaintiff bears the burden to establish a causal connection sufficient to survive summary judgment. As previously discussed, there is no support for Plaintiff's claims that Sgt. Biles has been involved in assaults on inmates. Plaintiff also has not established that Defendants Taylor and Kearney did not provide proper training.

When asked why he named Defendant Taylor in his Complaint, Plaintiff alleged that Defendant Taylor failed to investigate after Plaintiff wrote to him and that he should have prevented the alleged assault from happening. (Exhibit "A" – Jones Dep. 30:14-24). He further stated that "[he was] going to assume that [Defendant Taylor] did know that this particular officer was assaulting inmates . . .". (*Id.* at 32:22-23). When Plaintiff was asked whether he was alleging that Defendant Taylor was personally involved with assaulting, he replied "No". (*Id.* at 32:10-12). When asked why he named Defendant Kearney in the Complaint, Plaintiff stated it was because Defendant Kearney failed to investigate the allegations which form the basis of his Complaint. (Exhibit "A" – Jones Dep. 39:8-16).

Plaintiff's claims against Defendants Taylor and Kearney for failure to investigate do not establish personal involvement or give rise to a constitutional claim. Even when viewing the facts in a light most favorable to Plaintiff, and assuming

8

*arguendo* that this is true; such a failure to investigate does not give rise to a constitutional claim. *Brown v. Dept. of Correction,* 2005 WL 3440645, at *3 (D.Del.)(Exhibit "K"). Further, a causal connection, sufficient to maintain a constitutional claim against Defendant Taylor, is not established based on Plaintiff's assumptions of what Defendant Taylor did or did not know. Plaintiff has an obligation to set forth specific facts through evidence to establish a genuine issue for trial. *Celotex*, 477 U.S. at 322.

Plaintiff has not established any causal link between the allegations in his Complaint and Defendants Taylor and Kearney. Thus, he has not established personal involvement and summary judgment in favor of Defendants should be granted.

    **C.**    **Plaintiff's failure to protect claims against Defendant Banks must fail because she was not present for the incident.**

"To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element)." *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994)). Deliberate indifference is a state of mind equivalent to a reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 834.

Plaintiff alleges in his Complaint that Defendant Banks stood by and permitted Sgt. Biles to assault Plaintiff. The record and Plaintiff's testimony do not support this argument. Defendant Banks let Jones off of the tier to go to Sgt. Biles's office but she did not observe or hear the incident. (Exhibits "C", "D"). When asked about Officer Banks in his deposition, Plaintiff readily admitted that he could not see

9

Officer Banks from where he was in the office. (Exhibit "A" – Jones Dep. 51:13-18).

Standard operating procedures at SCI require that officers write a report when they are present for or involved in an incident. That report must include the names of other officers and/or inmates who effected or witnessed the incident. (Exhibit "J" – Deloy Affidavit). If Officer Banks had been present for the incident, she would have written an incident report and her name would be included on the report of Sgt. Biles. (Exhibits "C", "D"). Officer Banks did not write a report, nor is her name listed on the incident report of Sgt. Biles. (Exhibits "B", "D").

There is no evidence to suggest that Officer Banks was present for the incident. The exclusion of Officer Banks's name from Sgt. Biles's incident report, the absence of an incident report by Officer Banks, the affidavits of Officer Banks and Sgt. Biles, and Plaintiff's testimony that he did not see Officer Banks support that she was not present for the incident. Thus, Officer Banks cannot be held liable for failure to protect Plaintiff.

Even if she had been present, any risk of harm was created by Plaintiff himself when he yelled at Sgt. Biles and approached the Sergeant in a threatening manner. Defendant Banks did not disregard any excessive risk of harm to Plaintiff and summary judgment in her favor should be granted.

**D.     Defendant Biles's actions were a reasonable response to Plaintiff's threatening behavior and Plaintiff's claim must fail.**

The United States Supreme Court has addressed the use of force in prisons by correctional officials in two seminal cases – *Whitley v. Albers*, 475 U.S. 312 (1986) and *Hudson v. McMillian*, 503 U.S. 1 (1992). In *Whitley*, the Court held that the Eighth Amendment's prohibition against cruel and unusual punishment excluded from

constitutional recognition *de minimis* use of force, provided that the use of force is not a sort "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327. The question a court must ask in deciding whether the force used by a prison official is unnecessary and wanton turns on "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*. at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The Court added a further word of caution in *Hudson* – not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

In determining whether a plaintiff's Eighth Amendment rights have been violated by the use of force, a court must consider five factors: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the extent of the injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and 5) any efforts made to temper the severity of the forceful response. *Whitley*, 475 U.S. at 321.

Considering the holdings in *Whitley* and *Hudson* and the five factors set for by the court in *Whitley*, the use of force by Sgt. Biles in this case was reasonable and justified and did not violate Plaintiff's rights.

   1. *The need for the application of force.*

Sgt. Biles needed to use force when he was approached by Jones in a threatening manner. (Exhibits "B", "C", "H"). Plaintiff was yelling, using profanity, and uncooperative from the moment he came to Sgt. Biles's office. *Id.* Sgt. Biles and the plaintiff were alone in the office when plaintiff continued to be uncooperative and

continued to yell. (Exhibit "C"). Jones failed to obey a direct order of Sgt. Biles to sit down and approached Sgt. Biles in a threatening manner, yelling, and with both hands raised. (Exhibits "B", "C", "H"). Sgt. Biles then acted quickly and effectively to ensure his safety, and subdued and handcuffed Plaintiff.

The need for the application of force is further supported by the record. The incident report and disciplinary report prepared by Sgt. Biles were prepared contemporaneously to the events of July 6, 2004. The incident report was approved by Sgt. Biles's shift commander, David Wilkinson. (Exhibit "B"). A use of force review was initiated by Lieutenant Joe Isaacs, who found that Sgt. Biles's actions were in accordance with SCI policies and procedures. (Exhibit "G"). Further, the disciplinary write-up proceeded to a hearing where Jones was found guilty of disorderly or threatening behavior, and this decision was affirmed on appeal. (Exhibit "H").

Considering the record in this case, it is clear that Sgt. Biles's use of force was necessary to quell a tense and volatile situation created by the Plaintiff.

2. *The relationship between the need and the amount of force used.*

Sgt. Biles used only the minimal force necessary to subdue Plaintiff. Sgt. Biles does not dispute that he used force to subdue Plaintiff. The force used, however, was reasonable non-deadly force necessary to maintain order and control in the facility. Sgt. Biles used only that force necessary to restrain plaintiff and to put his hands behind his back in handcuffs, this included use of the A-frame chokehold. (Exhibit "C"). Sgt. Biles was instructed on how to use this procedure during his training at the Academy. *Id.* Sgt. Biles then put Plaintiff against the wall and cuffed his hands behind his back. (Exhibit "C"). Once handcuffed, the use of force ended and plaintiff was escorted out of

the office. *Id.*

### 3. *The extent of the injury inflicted*

The injury inflicted was minimal and is consistent with the amount of force described by Sgt. Biles. The medical records describe a minor abrasion to Plaintiff's head and lip. (Exhibit "F"). Plaintiff testified to soreness in his neck and arm. (Exhibit "A" – Jones Dep. 68:4). These injuries are consistent with the amount of force used by Sgt. Biles to subdue Plaintiff and further indicate that the force was minimal. Plaintiff testified that all of his injuries healed within 24 hours. (*Id.* at 69-70). Plaintiff alleged in his Complaint that he was "denied medical attention." (Complaint, at Statement of Claim). In his deposition, however, he readily admitted to seeing the nurse immediately following the incident. (Exhibit "A" – Jones Dep. 68:12-14). He also stated that he did not seek or require additional medical attention after his initial visit with the nurse. (*Id.* at 71:10).

### 4. *Extent of the threat to the safety of staff and inmates as reasonably perceived by responsible officials on the basis of facts known*

The use of force was also consistent with the threat of safety as perceived by Sgt. Biles. Sgt. Biles was in the best position to perceive the threat to him. As previously discussed, Sgt. Biles and Plaintiff were alone in the office. (Exhibits "B", "C"). The threat to Sgt. Biles's safety was significant because he and Plaintiff were alone in a small space and Plaintiff was not handcuffed. Sgt. Biles proceeded to use that force necessary to restrain and handcuffed Plaintiff to ensure his and Plaintiff's safety.

### 5. *Efforts made to temper the severity of the forceful response*

The severity of the response by Sgt. Biles was tempered in several ways. Sgt. Biles first issued an order for Plaintiff to sit down and be quiet. (Exhibits "B", "C").

13

Plaintiff did not obey the order. Sgt. Biles then used only that force necessary to place Jones in handcuffs and once he was cuffed, the force ended. *Id.* Plaintiff was then immediately escorted to medical. (Exhibit "A" – Jones Dep. 68:12-14). The medical records of Plaintiff indicate that he was seen by Nurse Amy Munson who found only minor abrasions. (Exhibit "F"). Plaintiff testified that the Nurse instructed him to ice the areas which were sore and when he was placed in ASDA he iced both his neck and arm. (Exhibit "A" – Jones Dep. 68:9-11).

Given consideration of the above factors and the record in this case, summary judgment in favor of Defendant Biles should be granted. In *Hudson*, the Court held that prison officials facing decisions regarding the use of force must often make decisions quickly. Thus, their judgment should be given deference. "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against harm inmates may suffer if guards use force." *Id*. at 6. Correctional officers must make decisions as to the use of force "in hast, under pressure and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320. These officials must be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Sgt. Biles acted quickly, reasonably, and in good faith in response to a volatile situation. He acted to restore order, to curb the threat to himself and Plaintiff, and to maintain institutional security. Sgt. Biles's actions were a reasonable response to

the threat posed by Plaintiff. Further, Plaintiff's injuries, or lack thereof, strongly supports that only minimal force was used. Plaintiff cannot maintain an action against Sgt. Biles for excessive force and summary judgment in favor of Defendant Biles should be granted.

II. **Defendants Are Immune From Liability For Plaintiff's Claims.**

Plaintiff seeks to hold Defendants liable in their official, as well as their individual capacities. Defendants, however, are immune from such claims.

**A.    Defendants are immune from liability in the official capacities pursuant to the Doctrine of Sovereign Immunity and the Eleventh Amendment.**

To the extent that Jones seeks to hold the Defendants liable in their official capacities for the alleged torts and/or constitutional violations, the Doctrine of Sovereign Immunity bars such claims.[3] *See* Del. Const. Art. I., Sec 9; *Doe v. Cates*, 499 A.2d 1175 (Del. 1985). The Defendants in this case clearly acted without gross or wanton negligence and their actions arose out of, and in connection with the performance of official discretionary duties. 10 *Del. C.* § 4001. Thus the Defendants are immune from Jones's tort and constitutional claims.

To the extent Plaintiff's Complaint names Defendants in their official capacities, Defendants are immune from liability under the Eleventh Amendment. The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress's intent to waive

---

[3] The Court has already dismissed claims against Defendant Taylor in his official capacity. (D.I. 21).

15

the state's immunity will produce this result. *Id.* No such clear intent can be found in 42 *U.S.C.* § 1983. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 *U.S.C.* § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks jurisdiction over the Defendants in their official capacities, and the Defendants are outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Therefore summary judgment is appropriate.

    **B.**    **Defendants are immune from liability in their individual capacities pursuant to the doctrine of qualified immunity.**

Plaintiff also cannot maintain an action against the Defendants in their individual capacities pursuant to the doctrine of qualified immunity. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

In this case, Defendants Biles's actions were reasonable in light of the threat posed by Jones to the safety of himself and Sgt. Biles. Defendant Biles used minimal force to maintain order and restore discipline. Defendant Banks was not present for the incident so she did not act, let alone act to violate Jones's constitutional rights. Finally, because there is no evidence to establish a causal link between any action by Defendants Taylor or Kearney and a deprivation of Plaintiff's constitutional right, it can not be said that they have violated a clearly established right of Plaintiff. Given the facts as available, Defendants are entitled to qualified immunity as Defendants either executed their discretionary duties in good faith and not in violation of Jones's rights or had no involvement with the alleged allegations in the Complaint.

Given that the Defendants are immune from liability in their official and individual capacities, Plaintiff cannot maintain this action and the Motion for Summary Judgment should be granted.

### III.    CONCLUSION

For the above stated reasons, Defendants respectfully request that this Honorable Court grant their motion for summary judgment and dismiss Plaintiff's claims against them with prejudice.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Stacey Xarhoulakos*
Stacey Xarhoulakos (#4667)
Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
*Attorney for Defendants*

Dated: August 17, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2007, I electronically filed *Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on August 17, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: Robbie Jones

/s/ Stacey Xarhoulakos
Stacey Xarhoulakos, I.D. No. 4667
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
stacey.xarhoulakos@state.de.us
*Attorney for Defendants*