IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBBIE D. JONES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. Action No. 04-1523-JJF |
| | : |
| COMMISSIONER STAN TAYLOR, | : |
| WARDEN RICK KEARNEY, | : |
| SGT. BARRY BILES, and | : |
| C/O TEANNA BANKS, | : |
| | : |
| Defendants. | : |

Robbie D. Jones, Pro se Plaintiff, Sussex Correctional Institute, Georgetown, Delaware.

Stacey Xarhoulakos, Esquire, Deputy Attorney General, Delaware Department of Justice. Attorney for Defendants.

**MEMORANDUM OPINION**

February 21, 2008
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is Defendants' Motion For Summary Judgment and Plaintiff's response thereto (D.I. 31, 34.) Also pending is Defendants' First Motion For Extension Of Time. (D.I. 30.) For the reasons set forth below, the Court will grant Defendants' Motion For Summary Judgment.

## I. INTRODUCTION

Plaintiff Robbie D. Jones ("Plaintiff"), an inmate at the Sussex Correctional Institute ("SCI") filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging Defendant Sgt. Barry Biles ("Biles") used excessive force against him, Defendant C/O Teanna Banks ("Banks") failed to protect him, and Defendants former Commissioner Stan Taylor ("Taylor") and former warden Rick Kearney ("Kearney") failed to properly train and supervise Biles and Banks in dealing with inmates. Earlier in this proceeding, the Court dismissed all monetary claims against Taylor in his official capacity. (D.I. 21.)

## II. STANDARD OF LAW

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

-1-

Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendants move for summary judgment on the basis that Plaintiff cannot establish an Eighth Amendment claim against any Defendants and they are immune from liability. Plaintiff argues that there remain genuine issues of material fact and, therefore, summary judgment should be denied.

## III.  BACKGROUND

Plaintiff alleges that he was assaulted by Biles on July 6, 2004. An incident report for the date, authored by Biles, states that he was making escorts across the prison compound when he heard inmate Brittingham and Plaintiff standing at the yard gates hollering and using profane language. (D.I. 32, ex. B.) Plaintiff testified that he was in the gym playing basketball, he was never outside, and he did not remember seeing Biles until he came downstairs. (D.I. 32, ex. A at 52-53.) Plaintiff testified that one must go outside when moving from the gym to the tier. (Id.)

Biles returned to his building and had both inmates called individually into his office. (D.I. 32, exs. B, C.) Biles spoke to Brittingham first and then called Plaintiff into his office. (Id. at ex. B.) According to Plaintiff he was called into Biles office for no reason. (D.I. 32, ex. A at 51.) Banks escorted Plaintiff to Biles' office, but she did not stay there. (D.I. 32, ex. C.) Biles reported that when Plaintiff used loud and

profane language, he told Plaintiff to sit down and be quiet. (Id.) Plaintiff then stepped up to Biles in a very threatening manner raised both hands and said "You can't make me sit the f— down, what the f— is next." (Id.) Biles reported it was at this time, that he physically subdued Plaintiff, handcuffed him, and escorted him to administrative segregation (Id.) When he subdued Plaintiff, Biles used an A-frame chokehold, a procedure he was taught when he trained at the academy. (D.I. 32, ex. C.) A use of force review determined that Biles had followed the proper procedure. (D.I. 32, exs. C, G.)

Plaintiff testified that he did not make any threatening moves, that Biles told him to go upstairs, and when he turned around to go upstairs, Biles hit him for no reason. (D.I. 32, ex. A at 50.) At the time Plaintiff was standing by a chair in the office and Biles was in the doorway. (Id. at 51.) Banks was not in the office, but was somewhere in the stair area. (Id.) Plaintiff could not see Banks. (Id.) Banks avers that she did not observe any incident between Biles and Plaintiff. (D.I. 32, ex. D.) Nor did C/O David Seymore observe the incident, although Plaintiff alleges that he did. (D.I. 32, ex. E.)

After the alleged incident Plaintiff was taken to medical where he saw a nurse. (D.I. 32, ex. A at 67.) The nurse told Plaintiff that he had a scratch on his head. (Id.) Medical

-4-

notes reveal that upon examination Plaintiff had a small abrasion on his head and a small laceration on his top lip, with no other problems. (D.I. 32, ex. F.) Plaintiff testified that he told the nurse that his neck and arm hurt, the nurse told him he would be "all right", sent Plaintiff out, and said "get some ice." (D.I. 32, ex. A at 68.) Plaintiff testified that he also had a small lump on his head. (Id. at 93.) Plaintiff did not see any other nurse or request follow-up medical care. (Id. at 69, 71.) He testified that he did not receive a lasting injury, but was roughed up a little bit. (Id. at 70.)

Plaintiff received a disciplinary write-up for inciting a riot in relation to the incident in the yard. (D. I. 32, ex. H.) He also received a write-up for disorderly and threatening behavior in relation to the incident in Biles' office. Plaintiff was found guilty of disorderly or threatening behavior and not guilty of inciting a riot, and appealed. The decision was affirmed on appeal. (Id.) Plaintiff was sanctioned fifteen days loss of all privileges. (Id.)

Plaintiff testified that he did not think that the correction officers receive in-depth training. (D.I. 32, ex. A at 73.) SCI Warden Mike Deloy ("Deloy") averred that all correction officers are required to participate in a rigorous eight-week training program prior to becoming officers and the training includes basic defense training and training on the use

-5-

of force. (D.I. 32, ex. J.) Officers are required to participate in a refresher course once every year on the use of force module. (Id.)

Plaintiff testified during his deposition that he assumed Taylor knew that Biles was assaulting inmates. (D.I. 32, ex. A at 32.) Biles has worked at SCI since 1998 and there is nothing in his personnel file that he has been disciplined for anything, including for assaulting inmates. (D.I. 32, ex. J.) Plaintiff testified that he named Taylor as a defendant because he wrote to Taylor and asked him to investigate the matter, but nothing was done. (D.I. 32, ex. A at 30-32.) Plaintiff named Kearney as a defendant because he wrote letters to him and sent him a copy of his grievance but he received no response. (Id. at 38-39.)

## IV. DISCUSSION

### A. Respondeat Superior/Personal Involvement

Taylor and Kearney argue that Plaintiff cannot maintain an action against them on the basis of supervisory liability. As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d

347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. Id.; see Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d Cir. 2005).

Defendants argue that Plaintiff has failed to identify what specific policy Taylor and Kearney failed to employ that created an unreasonable risk of harm. The Complaint alleges that Taylor and Kearney failed to properly train correction officers. Plaintiff testified that he did not believe correction officers received in-depth training. Plaintiff provided no facts to support his belief, and the evidence of record is that correction officer receive training prior to becoming correction officers and they attend annual refresher courses.

The Complaint also alleges that Taylor and Kearney were aware that in the past Biles had assaulted inmates, but again the

record does not support the allegation. There is nothing in the record indicating that Biles has ever been disciplined, much less that he has been disciplined for assaulting inmates. Plaintiff appears to rest his theory that Taylor and Kearney were aware of Biles' alleged previous actions because he wrote to them following the alleged assault and they did not conduct an investigation. The claims of failure to investigate - after the fact - do not rise to the level of a constitutional violation. The record does not support a finding that Taylor or Kearney were the "driving force [behind]" the list of alleged violations. More so, the record does not support a finding that Taylor or Kearney were aware of Plaintiff's allegations and remained "deliberately indifferent" to his plight. Sample v. Diecks, 885 F.2d at 1118.

Plaintiff has failed to make a sufficient showing to defeat summary judgment. Based upon the foregoing, the court will grant Defendants' Motion For Summary Judgment on the issue of respondeat superior and personal involvement.

### B. Failure to Protect

Defendants move for summary judgment on the failure to protect issue on the basis that Banks was not present during the July 6, 2004 incident. Plaintiff argues that Banks either heard him yelling or did not hear anything, did not come, and, therefore, failed to protect him.

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); see also Griffin v. DeRosa, 153 Fed. Appx. 851, 2005 WL 2891102 (3d Cir. 2005).

It is unrefuted that Banks was not present in the office at the time of the incident between Biles and Plaintiff. Indeed, Plaintiff's testimony, as well as the affidavits submitted by Defendants, refute Plaintiff's allegations that Banks knew of and consciously disregarded an excessive risk to Plaintiff's health or safety. See Farmer v. Brennan, 511 U.S. 825, 847 (1994). Even viewing the facts in the light most favorable to Plaintiff, a reasonable jury could not find in his favor. Therefore, the Court will grant Defendants' Motion For Summary Judgment on the failure to protect issue raised against Banks.

C. **Excessive Force**

Defendants argue that, because Biles' actions were a reasonable response to Plaintiff's threatening and aggressive behavior, he did not violate Plaintiff's Eighth Amendment rights. Plaintiff argues that Biles actions were excessive and there was

no need for the application of force just because Biles "says so."

When analyzing an excessive force claim under the Eighth Amendment, the Court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citations omitted). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir. 1984). The Court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat reasonably perceived by the responsible officials; and (5) the efforts made to temper the severity of a forceful response. Davis v. Carroll, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Weighing all five factors, the evidence of record does not support a finding that Biles used excessive force. Granted, as to the first factor, in dispute is whether the use of force was necessary. Plaintiff testified that he did nothing and said nothing. Incident reports and disciplinary charges indicate that

Plaintiff engaged in disorderly and threatening behavior, and he was found guilty of those charges. The other factors, however, weight in Biles' favor. As to the second factor, the record reflects that Biles used minimal force, which included an A-frame chokehold, and that the use of force was investigated and approved by Biles' supervisor. Once he was under control, Plaintiff was handcuffed. As to the third factor, Plaintiff received a minimal injury, and never sought follow-up medical treatment after his initial visit with the nurse. Notably, Plaintiff testified that he did not receive a lasting injury, but was roughed up a little bit. With regard to the fourth factor, Biles testified that he perceived a threat from Plaintiff, even though Plaintiff testified that he did not threaten Biles. Only Biles, however, could determine if he felt threatened. The record reflects that Biles and Plaintiff were alone, in a small space, and Plaintiff was not handcuffed. Finally, as to the fifth factor, as soon as Plaintiff was handcuffed the force ended and he was immediately taken to medical.

    The evidence before the Court is insufficient to enable a jury to reasonably find for Plaintiff. Therefore, the Court will grant Defendants' Motion For Summary Judgment on the issue of excessive force.

## V.   CONCLUSION

The Court will grant Defendants' Motion for Summary Judgment.  (D.I. 31.)  The Court will deny as moot Defendants' First Motion For Extension Of Time.  (D.I. 30.)  An appropriate Order will be entered.